

RETENTION AGREEMENT

This Retention Agreement ("Agreement") is between ―――――――――――――――――("856 Greene Avenue Properties (("Debtor") and ~~North Point~~Northgate Real Estate Group ("~~North Point~~Northgate"). Debtor hereby employs and retains ~~North Point~~Northgate, granting ~~North Point~~Northgate for a period of time as set forth herein to act as special real estate advisor for the Debtor having, among other things, the sole and exclusive and irrevocable right and authority to arrange a joint venture, financing or recapitalization, negotiate refinancing, reinstatement, discounted payoff, sell, net lease or otherwise dispose or all or any portion of the real property known as, and/or air rights pertaining to ―――――――――――――――――856 Greene Avenue, Brooklyn NY (all or a portion of the property and/or air rights related thereto are referred to hereinafter as the "Property").

1. Subject to approval of the Bankruptcy Court (defined hereinafter), the term of Debtor's retention of ~~North Point~~Northgate shall be effective and commence on the date this Agreement is executed by both parties and shall continue in effect for one hundred eighty (180) days from the date of entry an order of the Bankruptcy Court approving this Agreement (the "Term"). Thereafter, the Term ~~shall~~may only be ~~automatically~~ extended ~~for successive thirty (30) day periods until terminated by either party~~ upon ~~at least thirty (30) days advance~~ written consent of the Debtor and Northgate through an amendment to this Agreement and approval of such amendment by the Bankruptcy Court after notice ~~to the other party~~and an opportunity for a hearing.

2. ~~Upon the Bankruptcy Court's approval of Debtor's retention of North Point, Debtor will pay North Point an upfront retainer ("Retainer") in the amount of one hundred thousand dollars ($100,000). Owner will be entitled to a credit in the amount of the Retainer against any amounts owed to North Point under paragraphs 3 through 8 of this Agreement.~~

~~(A) North Point~~

~~3.~~2.  Northgate will be paid a commission equal to six percent (6%) of the gross purchase price of the Property, which will be paid directly to ~~North Point~~Northgate at closing without further order of the Court, by the successful purchaser, separate from and in addition to the consideration (or gross purchase price) that the successful purchaser pays for the Property, upon the occurrence of any of the following events:

    ~~i.~~a. Debtor enters into an agreement during the Term to sell, transfer or convey ownership of the Property in whole or in part, whether individually or as part of a package, or a sale of the Property at a bankruptcy auction, or other sale permitted by the bankruptcy court, such as a sale under Section 363 of the Bankruptcy Code or pursuant to a confirmed plan of reorganization, regardless of whether the closing occurs after the expiration of the Term and regardless of whether the Debtor engages a different broker or advisor to close a transaction~~. The commission will be paid by the successful purchaser, separate from and in addition to the consideration (or gross purchase price) that the successful purchaser pays for the Property~~; or

    ~~ii.~~b. If a sale, exchange, or other conveyance of the Property or ownership or control of the Property is made or takes place within the "Additional Period" after expiration of the Term to a Prospective Purchaser with whom Debtor had not reached an agreement during the Term, but with whom ~~North Point~~Northgate has negotiated concerning the Property, or to whose attention the Property has been brought by ~~North Point, or who was introduced to Debtor by North Point during the Term, or to a~~



~~credit bidder.~~Northgate, or who was introduced to Debtor by Northgate during the Term; provided, however, a sale or conveyance to the Debtor's secured lender, Wells Fargo Bank, N.A. as Trustee for the Wells Fargo Bank, National Association, as Trustee for Morgan Stanley Capital I Trust 2019-H6, Commercial Mortgage Pass-Through Certificates, Series 2019-H6 (together with its successors, assigns, and designees, the "Lender") (through foreclosure, a deed in lieu, or otherwise shall not be subject to any commission during the Additional Period. For these purposes, a "Prospective Purchaser" shall include partnerships, joint ventures, limited liability companies, corporations, trusts or other similar entities which the prospective buyer represents, is involved with, or in which it holds an ownership, management, or beneficial interest~~. The commission will be paid by the Debtor~~, but shall not include the Lender.

(B) ~~For the avoidance of doubt, if Debtor enters into a contract for the sale of the Property, the result of which would entitle North Point to a commission hereunder, and a higher or better offer is approved by the Bankruptcy Court, then regardless of who may be the successful purchaser, North Point will be entitled to a commission pursuant to the terms of this Agreement, as, if and when the closing with the successful purchaser occurs, based on the successful purchaser's gross purchase price.~~

~~(C)~~c. Notwithstanding the foregoing, if Lender is the successful purchaser by bidding all or a portion of its claim and closes on the purchase~~,~~ ~~Lender agrees to~~ of the Property, Debtor shall pay ~~North Point~~Northgate a commission equal to ~~three~~one hundred ~~fifty~~ thousand dollars ($~~350~~100,000~~). If any assignee of Lender not affiliated with Lender is the successful purchaser~~.00) and~~/or closes on the purchase of the Property, then the assignee must pay the buyer's premium equal to six percent (6%) of the gross purchase price for the Property~~ Northgate shall be entitled to no other compensation under this Agreement.

~~(D)~~ For the purposes of this Agreement, ~~the "Additional Period" will be one year after expiration of the Term, and~~ the term "gross purchase price" includes the sum of the total consideration transferred to, or for the benefit of, the Debtor and ~~value of debt and liabilities assumed and liabilities reduced, and any credit bid by a secured lender, and any consideration transferred to or for the benefit of the secured lender for the assignment of its credit bid or claim, and~~ contingent, earned or other consideration paid or payable, directly or indirectly, in connection with a sale or transfer of title to the Property. For the purposes of this Agreement, the gross purchase price and the commission due to ~~North Point~~Northgate will not be offset or reduced by the costs of advertising, the Debtor's legal fees, any break-up fees, broker's expenses or closing costs and/or closing adjustments, including any adjustments and/or payments of whatever kind to lienholders, secured parties or offerors. Debtor will not close on any sale or transfer of the Property unless ~~North Point~~Northgate is paid at the closing the commission to which ~~North Point~~Northgate is entitled hereunder or the Bankruptcy Court orders otherwise after notice and hearing.

For the avoidance of doubt, if Debtor enters into a contract for the sale of the Property, the result of which would entitle Northgate to a commission hereunder, and a higher or better offer is approved by the Bankruptcy Court, then regardless of who may be the successful purchaser, Northgate will be entitled to a commission pursuant to the terms of this Agreement, as, if and when the closing with the successful purchaser occurs, based on the successful purchaser's gross purchase price; provided, however, if the higher and better offer is a credit bid by Lender, Northgate shall be entitled to a commission equal to the amount of $100,000.00.

4.~~3.~~  Should, during the Term, Debtor enter into an agreement to refinance, borrow against, restructure its existing obligations encumbering the Property, including debt or interest rate, and/or recapitalize the Property, in



whole or in part, and/or enter into a joint venture agreement relating to the Property, then Debtor will pay North PointNorthgate, at closing, a fee in anthe amount equal toof the lesser of (a) $100,000.00 and (b) six percent (6%) of the aggregate amount of gross refinancing or, restructured indebtedness, recapitalization, and/or joint venture investment received or obtained, or to be received or obtained by Debtor, as the case may be, regardless of when the closing of same takes placethe Debtor.

5.4.  For the purposes of this Agreement, the "Additional Period" will be six months after expiration of the Term. Should, during the Additional Period, Debtor enter into an agreement to refinance, borrow against, restructure its existing obligations encumbering the Property (including debt or interest rate), and/or recapitalize the Property, in whole or in part, and/or enter into a joint venture agreement relating to the Property, in each case with a person or entity (other than Lender or an assignee of Lender) with whom North PointNorthgate has negotiated concerning the Property, or to whose attention the Property has been brought by North PointNorthgate, or who was introduced to Debtor by North PointNorthgate during the Term, then Debtor will pay North PointNorthgate, at closing, a fee in anthe amount equal toof the lesser of (a) $100,000.00 and (b) six percent (6%) of the aggregate amount of gross refinancing or, restructured indebtedness, recapitalization, and/or joint venture investment received or obtained, or to be received or obtained by Debtor, as the case may be, regardless of when the closing of same takes placethe Debtor.

6.5.  Should Debtor enter into an agreement with its secured lenderthe Lender to pay off the secured lender'sLender's claim at a discount from the full amount owed, then Debtor will pay North PointNorthgate, at the time of the payoff, a fee in anthe amount equal to twentyof the lesser of (a) $100,000.00 and (b) ten percent (2010%) of the difference between (i) the full payoff amount owed to the secured creditorLender as of the date of the payoff and (ii) the amount that the secured lenderLender accepts as payment in full of its secured claim.  This fee will be due and payable by Debtor regardless of whether the secured lenderLender delivers an assignment of mortgage or satisfaction of mortgage in connection with the transaction.  For the avoidance of doubt, should OwnerDebtor enter into a transaction that entitles North PointNorthgate to collect a fee under multiple paragraphs, North PointNorthgate will be entitled to only one fee, in accordance with the paragraph that entitles North PointNorthgate to collect the highest amount.

6.   In any event and except for compensation under paragraph 7 (which is set at $50,000), the minimum amount of compensation to which Northgate will be entitled to for services to be rendered under this Agreement is one hundred thousand dollars ($100,000.00), to be paid by Debtor, notwithstanding anything to the contrary contained herein.

7.   Should an agreement be reached with the secured creditorLender to transfer title to, ownership or control of the Property to the secured creditor or its designeeLender (whether by deed in lieu of foreclosure, under a bankruptcy plan of reorganization or otherwise) in return for cash payment to Debtor, its estate, or its designee, then North Point will be entitled tothe Debtor shall pay Northgate a fee in anthe amount equal to twenty percent (20%) of the gross amount of any such cash payment. $50,000.00.  This fee willshall be paid to North PointNorthgate by the Debtor on or before the transfer of title, ownership, or control of the Property to secured creditorLender or its designee.

8.   In any event, the minimum amount of compensation to which North Point will be entitled to for services to be rendered under this Agreement is four hundred thousand dollars ($400,000), to be paid by Debtor, notwithstanding anything to the contrary contained herein.



9.8. All inquiries, offers, expressions of interest and communications from principals, outside brokers and other parties or professionals will be re-directed and referred to ~~North Point~~Northgate by Debtor, its principals, officers, counsel, accountants and other professionals or representatives. Debtor agrees to conduct all negotiations through ~~North Point~~Northgate exclusively and to advise all interested persons of this exclusive right. Debtor agrees to conduct all negotiations through ~~North Point~~Northgate exclusively. Should another broker be involved in a sale, refinancing, recapitalization or restructuring of the Property, it may seek compensation only from its client. Subject to Bankruptcy Court approval of this Agreement, ~~North Point~~Northgate will be authorized to act as agent for Debtor, and to advertise, market, negotiate and coordinate the closing on the sale or refinancing of the Property. In order to coordinate efforts concerning a possible transaction, neither Debtor nor any representative of Debtor will initiate any discussions with a third party regarding a potential transaction involving the property except through ~~North Point~~Northgate.

~~10.~~9. Debtor will reimburse the reasonable and documented out-of-pocket expenses incurred by ~~North Point~~Northgate in an amount not to exceed $15,000.00 in its performance under this Agreement, including without limitation reasonable expenses of marketing, advertising, promotion, travel and transportation, postage, courier and overnight express fees. ~~North Point~~Northgate will be reimbursed by Debtor for its out-of-pocket expenses at the time of closing, or alternatively, upon forwarding an invoice to Debtor, if the Property is not sold. For the avoidance of doubt, ~~North Point's~~Northgate's right to this expense reimbursement is separate and apart from any right it may have to a fee or commission hereunder.

~~11.~~10. Debtor will, promptly after its execution of this Agreement, file an application and proposed order seeking from the Bankruptcy Court approval of its employment of ~~North Point~~Northgate pursuant to the terms of this Agreement, pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code. Debtor agrees and acknowledges to attach a complete copy of this Agreement to the application. Debtor will provide ~~North Point~~Northgate the employment application and proposed order authorizing Debtor's employment of ~~North Point~~Northgate sufficiently in advance of their filing in order for ~~North Point~~Northgate to have ample time to review and discuss any comments it may have with Debtor, and the employment application must be acceptable to ~~North Point~~Northgate in its discretion. The proposed order will include, without limitation, the following terms and conditions: (a) finding that none of the fees or commissions to ~~North Point~~Northgate hereunder constitute a "bonus" under applicable law; (b) directing that ~~North Point~~Northgate will be exempt from keeping time records for its work hereunder (as ~~North Point~~Northgate will not be billing on an hourly basis); (c) finding that the terms and conditions of this Agreement are reasonable. (d) all amounts due hereunder to ~~North Point~~Northgate will be paid at closing without a further application or order of the Bankruptcy Court; and (e) directing that any unpaid commissions, fees, and marketing expenses owed to ~~North Point~~Northgate shall be treated as an administrative claim under Section 507(a)(1) of the Bankruptcy Code.

~~12.~~11. If an order containing these terms is not obtained from the Bankruptcy Court within 30 days after both parties have signed this Agreement, then ~~North Point~~Northgate may terminate this Agreement in which case it will be null and void. If Debtor obtains an order of the Bankruptcy Court authorizing its use of cash collateral or debtor in possession financing and if the order requires submission of a proposed budget specifying post-petition expenditures, then Debtor will include in the budget line items providing for the payment of commissions or fees to be paid or reimbursed under this Agreement. All amounts projected to be paid to ~~North Point~~Northgate under this Agreement will be included in the carve-out for professionals provided in Debtor's bankruptcy case~~.~~, and, within 5 days of entry of an Order by the Bankruptcy Court approving of the Broker's retention, the Debtor will transfer $100,000.00 in cash to the IOLTA escrow



account of Debtor's counsel, to be held by Debtor's counsel as a retainer for paying the fees and expenses that may be incurred hereunder.

13.12. This Agreement may not be modified, assigned and/or rescinded, and once approved by the Bankruptcy Court, will be binding on and inure to the benefit of all parties including any of Debtor's affiliates, representatives, designees, successors, and assigns, unless it is changed in a writing signed by both parties. Debtor agrees to incorporate this Agreement into any sales contract for the Property.

14.13. Debtor will deliver to ~~North Point~~Northgate all financial and other information requested by ~~North Point~~Northgate for the purpose of its performance hereunder, including without limitation title reports, engineering, and environmental reports, building plans, plot plans and surveys, income and expense statements, lease summaries, and rent roll. All information provided by Debtor to ~~North Point~~Northgate will be, to the knowledge of Debtor, accurate and complete in all material respects, and if Debtor becomes aware that any information it has provided ~~North Point~~Northgate is or has become materially inaccurate or incomplete, Debtor will promptly so notify ~~North Point~~Northgate in writing. Debtor agrees to disclose to ~~North Point~~Northgate any existing liens or encumbrances against the Property and further agrees to disclose any new liens which arise during the Term. Debtor will immediately inform ~~North Point~~Northgate of any building code violations, environmental hazards or contamination relating to the Property, and of any existing or pending violation of federal, state, or local environmental laws that become known to Debtor. If Debtor has ordered any environmental reports or studies, as soon as same become available, Debtor will immediately provide a true and complete copy to ~~North Point~~Northgate, and ~~North Point~~Northgate is hereby authorized to disseminate same to prospects. ~~North Point~~Northgate will be entitled to rely, without independent verification, on the accuracy and completeness of all information supplied to it by Debtor and ~~North Point~~Northgate will not be responsible to Debtor, its creditors, or any third party for the inaccuracy or incompleteness of any information provided to it by Debtor.

15.14. To the fullest extent permitted by applicable law, Debtor will indemnify and hold ~~North Point~~Northgate and its employees (each a "Covered Person") from and against any and all losses, claims, demands, liabilities, expenses, judgments, fines, settlements and other amounts arising from any and all claims, demands, actions, suits, proceedings, civil, criminal, administrative or investigative in which the Covered Person may be involved, or threatened to be involved; as a party or otherwise, relating to or arising out of this Agreement or performance thereunder, except that no Covered Person shall be entitled to such indemnification with respect to any loss, claim, damage, demand, liability, expense, judgment, fine, or settlement incurred by such Covered Person by reason of such Covered Person's own gross negligence, willful misconduct or willful breach of this Agreement.

16.15. Debtor will share with ~~North Point~~Northgate information ~~North Point~~Northgate may request regarding the source of any sale, refinancing, or recapitalization of the loan that Debtor asserts did not involve ~~North Point~~Northgate or any of its agents or representatives to the extent such information may affect ~~North Point's~~Northgate's entitlement to payment hereunder.

17.16. Any commission or fee to which ~~North Point~~Northgate is entitled under this Agreement, as the case may be, will be paid at closing, by official bank / certified check or wire, and ~~North Point~~Northgate will be entitled to make demand of any escrow holder or closing attorney for payment from the proceeds of sale or refinance. For the avoidance of doubt, ~~North Point~~Northgate will be entitled to a commission or fee, as the case may



be, regardless of whether the buyer or other party entering into the subject transaction with Debtor was first introduced to the Property by ~~North Point~~Northgate.  Debtor hereby authorizes and instructs any escrow agent or counsel (without need for further authorization or permission) to pay ~~North Point~~Northgate its commission or fee in strict compliance with the terms of this Agreement, time being of the essence, simultaneously with the closing or other consummation of the subject transaction.

~~18.~~17.   Each party to this Agreement will deal with the other fairly so as to allow it to perform its duties and to receive the benefits of this Agreement and will not interfere, prevent, or prohibit the other party, in any manner, before or during the closing of a sale of the Property, from carrying out its obligations under or receiving the benefits of this Agreement.

~~19.~~18.   Should the Bankruptcy Court order a sale of the Property at auction, ~~North Point~~Northgate is authorized to and will act as the exclusive auctioneer and all terms will remain the same.

~~20.~~19.   Debtor represents and warrants to ~~North Point~~Northgate that:

   a. Upon approval by the Bankruptcy Court, Debtor will have the right, power, and authority to retain ~~North Point~~Northgate and will be authorized and directed to perform this Agreement, and this Agreement will constitute a valid and legally binding obligation of Debtor, enforceable in accordance with its terms.

   b. To the best of Debtor's knowledge and unless otherwise previously disclosed, Debtor now holds (and, up to the moment of sale provided for under this Agreement, will hold) good and marketable or insurable title to each Property.

   c. If Debtor reaches an agreement with a third party to refinance, borrow against, recapitalize, or sell any of the Property, Debtor will use its best efforts to obtain, and will not delay, any effort, application, petition, or motion to obtain any necessary approval of the Bankruptcy Court or any other judicial, governmental, or regulatory authority approval.

~~21.~~20.   Debtor agrees that ~~North Point~~Northgate and its affiliates, and their respective officers, directors, employees, agents, and representatives will not be liable (whether directly or indirectly, in contract, tort, or otherwise), to Debtor or its security holders or creditors for any matter, cause or thing related to or arising out of the retention of ~~North Point~~Northgate pursuant to, or the performance by ~~North Point~~Northgate of services under, this Agreement except to the extent that ~~North Point~~Northgate if found by final judgment by a court of competent jurisdiction to have acted in bad faith, or with gross negligence or to have engaged in willful misconduct in providing services pursuant to this Agreement.

~~22.~~21.   All fees payable to ~~North Point~~Northgate hereunder will be free and clear of any liens, claims, and encumbrances, including the liens of any secured creditor of Debtor.

~~23.~~22.   Except as otherwise set forth herein, ~~North Point~~Northgate will not be responsible for any other fees or commissions in connection with a disposition, refinancing, or recapitalization by the Debtor, including any fees or commissions that may be owed to any other broker.



24.23.   Debtor's obligations under this Agreement will survive any change in control of the Debtor.  If a trustee in bankruptcy is appointed for the Debtor, this Agreement will survive and remain in full force and effect.

25.24.   The Bankruptcy Court will retain jurisdiction over any and all disputes under or otherwise relating to the construction and enforcement of the transactions contemplated hereunder.  If the Debtor's bankruptcy case is dismissed, or the Automatic Stay is lifted or modified with respect to a Property and that Property is not disposed of under Bankruptcy Court jurisdiction, then any dispute between the parties arising under this Agreement will be resolved in the New York State Supreme Court, County of New York, Commercial Division.

26.25.   ~~North Point~~Northgate may at its option and own expense place announcements and advertisements or otherwise publicize its role in connection with this Agreement, including on ~~North Point's~~Northgate's website, in newspapers, periodicals, and in its marketing materials as it may choose, stating that it has acted as advisor to Debtor with respect to a transaction involving the Property.

27.26.   ~~North Point~~Northgate will have no liability for delays, failure in performance, or damages due to fire, explosion, lightning, power surges or failures, strikes or labor disputes, water, war, civil disturbances, acts of civil or military authorities, pandemic, telecommunications failures, fuel, or energy shortages, acts or omissions of communications carriers, or other causes beyond ~~North Point's~~Northgate's control whether or not similar to the foregoing.

28.27.   From time to time, ~~North Point~~Northgate or one of its affiliated entities may and shall have the right to advise or to provide services to several industry participants, some of which may be competitors of the Debtor.  The Debtor, and its directors, officers, members, and principals, waive any right to commence an action, suit, or proceeding or to make any demand, complaint, or claim against ~~North Point~~Northgate, its subsidiaries, affiliates, directors, officers, members, principals, or other personnel, that arises out of the right of ~~North Point~~Northgate or one of its related entities to advise or provide services to an industry competitor of the Debtor.   Notwithstanding the foregoing, because of the number of brokers, salespersons, and agents affiliated with ~~North Point~~Northgate, a broker, salesperson, agent, or team affiliated with ~~North Point~~Northgate may on occasion represent a prospect who may be interested in the Property, and which representation is intended to be independent of ~~North Point's~~Northgate's representation hereunder.  In such a case, ~~North Point~~Northgate will disclose its dual role in the potential transaction to the Debtor and to the prospect, will and implement reasonable industry safeguards to assure confidentiality to both the Debtor and the prospect.  The Debtor acknowledges and agrees that: (a) such occasional dual representation may occur, subject to appropriate disclosure as provided above; (b) such broker, salesperson, agent, or team representing the prospect will be deemed to be a permitted independent engagement for purposes hereof, but Debtor will have no responsibility for same; and (c) Debtor agrees that ~~North Point~~Northgate will be entitled to compensation and reimbursement of any and all amounts due and payable hereunder notwithstanding a disclosed dual engagement.

29.28.   ~~North Point's~~Northgate's role will be as agent of the Debtor.  The Debtor will remain fully responsible for all decisions and matters as to which ~~North Point's~~Northgate's advice is sought.  ~~North Point~~Northgate is not assuming any management responsibilities for or on behalf of the Debtor.  Debtor and ~~North Point~~Northgate acknowledge and agree that Debtor's engagement of ~~North Point~~Northgate does not confer and is not intended to confer any rights upon any person or entity not a party hereto, including any security holders or creditors of the Debtor.  ~~North Point's~~Northgate's duties hereunder run solely to the Debtor.  All



advice provided by ~~North Point~~Northgate to the Debtor pursuant to this Agreement is intended solely for the use and benefit of the Debtor.  Debtor agrees that ~~North Point's~~Northgate's advice may not be disclosed publicly or made available to third parties without ~~North Point's~~Northgate's prior written consent.  ~~North Point~~Northgate may condition the granting of such prior written consent upon obtaining a non-reliance letter and a release from any such third parties.

~~30.~~29.  Any notice or communication sent with respect to this Agreement must be in writing and delivered via overnight mail (using a nationally recognized courier service):

If to Debtor:
_____856 Greene Avenue Properties LLC
_____9 Kaufman Court
_____Monsey, NY 10952
_____

If to ~~Lender~~Northgate:

_____
_____
_____
_____

~~If to North Point:~~
~~North Point~~Northgate Real Estate Group
~~433 Fifth Avenue, 4th Fl.~~
156 West 56th Street, 3rd Floor
New York, NY ~~10016~~10019
Attn: Greg Corbin

With a copy of any notice to Debtor or Northgate made to counsel to the Debtor's secured lender:

Matthew G. Summers
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801

All such notices or communications will be deemed to have been given one business day following the date of delivery by overnight mail addressed as aforesaid.

~~31.~~30.  Signatures to this Agreement may be exchanged by hand, by mail, by fax, by photocopy, or in counterparts; any such method being binding on both sides when completed and exchanged.

~~32.~~  This agreement is subject to approval of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  If this Agreement is not approved by the Bankruptcy Court, then this Agreement will be deemed terminated and ~~North Point~~Northgate will have an allowed quantum meruit claim for its



31. services. This paragraph will survive termination of this Agreement. This Agreement has been made under and will be governed by the laws of the State of New York., without giving effect to conflicts of law rules.

If the foregoing accurately sets forth our Agreement, please sign below and return this original Agreement to ~~North Point~~Northgate. This Agreement contains the entire agreement between Debtor and ~~North Point~~Northgate. Any prior discussions and agreements between the parties concerning this subject matter are superseded by this Agreement. This Agreement will be deemed to have been jointly drafted by the parties and there will be no presumption in interpretation against either party as the drafter of this Agreement. The terms of this Agreement may not be modified or changed except by a writing signed by the parties. Each of Debtor and ~~North Point~~Northgate understands that this is a legal document, acknowledges that it has consulted with counsel of its choice regarding its terms before deciding whether to execute it, and agrees to the terms and conditions set forth herein.

| | |
|---|---|
| **ENTITY (BORROWER)** | ~~**NORTH POINT**~~**NORTHGATE REAL ESTATE GROUP** |
| Name: _____ | Greg Corbin |
| Title: _____ | President |
| Authorized signature: _____ | Authorized signature: *[signature]* |
| Date: _____ | Date: ~~_____~~ 11/26/23 |

~~**ENTITY (LENDER)**~~

~~Name:_____~~

~~Title:_____~~

~~Authorized signature: _____~~

~~Date: _____~~